IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL SELLERS and MELANA SELLERS, husband and wife; CAROLYN DUNCAN, an individual; DAWN FREEDAIN, an individual; THOMAS GRADT, an individual; ASHLEY MEAD, an individual; ANTHONY MOFFAT, an individual; JACOB OLSEN, an individual; JOSH OLSEN; an individual; ZACH BAGGIO, an individual; ALLSTATE INSURANCE COMPANY, an Illinois corporation; CSAA FIRE AND CASUALTY INSURANCE COMPANY, a California corporation; TRUCK INSURANCE EXCHANGE, a California corporation; and COMMONS AT TIMBER CREEK, an Oregon corporation;<br><br>　　　　　Defendants. | Case No. 3:18-cv-00517-JR<br><br>ORDER |

RUSSO, Magistrate Judge:

　　Plaintiff State Farm Fire and Casualty Company initiated this interpleader action against

defendants Daniel Sellers, Melana Sellers, Carolyn Duncan, Dawn Freedain, Thomas Gradt,

Ashley Mead, Anthony Moffat, Jacob Olsen, Josh Olsen, Zach Baggio, Allstate Insurance

Page 1 – ORDER

Company, CSAA Fire and Casualty Insurance Company, Truck Insurance Exchange, and Commons at Timber Creek. The Court subsequently discharged plaintiff from further liability and determined attorney fees and costs were warranted, in an amount to be determined.

Plaintiff now moves for an award of attorney fees in the amount of $21,446.50 and costs in the amount of $1298.80. For the reasons set forth below, attorney fees and costs are awarded in the reduced sums of $16,788.88 and $1,020.70, respectively.

**BACKGROUND**

On March 26, 2018, plaintiff filed a complaint in this Court for interpleader and declaratory relief. That same day, plaintiff moved to deposit the amount of the underlying insurance policy proceeds – i.e., $300,000. On March 28, 2018, the Court granted plaintiff's motion and ordered that plaintiff's tendered funds be deposited into the Court's registry pending final judgment.

On April 20, 2018, plaintiff filed a motion for discharge from further liability and attorney fees. Plaintiff's motion was unopposed by all defendants. Accordingly, in its August 20, 2018, Findings and Recommendation ("August 2018 F&R"), the Court recommended that plaintiff's motion be granted and instructed plaintiff to submit a separate motion for fees and costs under Fed. R. Civ. P. 54. On September 10, 2018, the Honorable Michael H. Simon adopted the August 2018 F&R.

On September 27, 2018, plaintiff filed the present motion for attorney fees and costs. This motion is also unopposed by all defendants.

**STANDARD**

Pursuant to the prevailing party's motion, the court may award reasonable attorney fees and costs. Fed. R. Civ. P. 54(d); LR 54. In determining a reasonable attorney fee, the court employs the lodestar method by first multiplying "the number of hours the prevailing party reasonably

expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) (as amended). The court then considers whether it is necessary to adjust the presumptively reasonable lodestar figure in light of the twelve factors articulated in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). Id.

The court is required to ensure an award's reasonableness, irrespective of any opposition from the non-prevailing party. Gates v. Deukmejian, 987 F.2d 1392, 1400-02 (9th Cir. 1992); see also Corder v. Gates, 947 F.2d 374, 378 n.3 (9th Cir. 1991) ("the reasonable fee, as calculated by the district court, may fall short of the actual fee that the plaintiff's lawyer charges") (citation and internal quotations omitted). "[C]onsiderable discretion [is vested in the court] in determining what attorney's fee is reasonable." Webb v. Ada Cnty., Idaho, 195 F.3d 524, 526-27 (9th Cir. 1999).

**DISCUSSION**

Because plaintiff's entitlement to fees and costs was previously determined, the sole issue before the Court is the reasonableness of the requested rates, hours, and expenses.

**I.       Reasonableness of the Requested Rates**

Plaintiff employed four Portland, Oregon, attorneys (David Rossmiller, Guy Thompson, Elissa Boyd, and Kelsey Terry) and one paralegal (Natosha Chason) on this matter. Rossmiller Decl. ¶ 2 & Ex. 1 (doc. 41). Plaintiff seeks the following hourly rates: $230 for Rossmiller, who has 20 years of experience; $210 for Thompson, who has 1 year of experience; $210 for Boyd and Terry, each of whom have more than five years of experience; and $105 for Chason.[1] Id.

A reasonable rate for legal services is "calculated according to the prevailing market rates in the relevant community." McElmurry v. U.S. Bank Nat'l Ass'n, 2008 WL 1925119, *3 (D. Or.

---

[1] Plaintiff failed to specify the amount of experience held by its attorneys, such that the foregoing information is based on the Oregon State Bar's membership directory.

Page 3 – ORDER

Apr. 30, 2008) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "This District considers the most recent Oregon State Bar Economic Survey" – i.e. the 2017 Oregon State Economic Survey ("2017 OSB Survey") – as its 'initial benchmark' in determining whether hourly billing rates are reasonable." Prison Legal News v. Umatilla Cnty., 2013 WL 2156471, *4 (D. Or. May 16, 2013) (citations omitted). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." Id. (citation omitted).

The "relevant community" for the purposes of plaintiff's motion is Portland, Oregon, because that is the division in which this case was filed, as well as where counsel is located and the underlying events took place. See id. at *5 ("[t]he general rule is that the relevant community for purposes of the prevailing rate is the forum in which the district court sits") (citation and internal quotations omitted).

The Court therefore turns to the reasonableness of the requested hourly rates. Here, the rates sought by plaintiff's counsel are all less than or equal to the median or mean rates for their practice area and respective levels of experience. Rossmiller Decl. Ex. 3 (doc. 41); 2017 OSB Survey 38-41; Pl.'s Mot. Att'y Fees 3 (doc. 40). As a result, counsel is awarded the requested rates of $230 for Rossmiller and $210 for Thompson, Boyd, and Terry. Furthermore, because Chason charges less than the average first-year associate, she is awarded her requested rate of $105 per hour. See Prison Legal News, 2013 WL 2156471 at *7 (paralegal rates are "reasonable where they do not exceed the average rate for a first-year associate") (citations omitted).

II.     **Reasonableness of the Hours Expended**

Plaintiff seeks compensation for the following hours: 41.1 for Thompson, 30.2 for Rossmiller, 16.9 for Terry, 8.1 for Boyd, and 5.1 for Chason. Rossmiller Decl. ¶ 5 & Ex. 1 (doc. 41). Although the hours requested are, for the most part, reasonable, some reductions are

warranted. See Prison Legal News, 2013 WL 2156471 at *7 (even where "the expended time is reasonable, the court may still reduce the fee award for defects in the plaintiff's motion for fees").

Specifically, Thompson, Terry, and Rossmiller frequently block bill. Rossmiller Decl. Ex. 1 (doc. 41). This District has "caution[ed] against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended." Foraker v. USAA Casualty Ins. Co., 2018 WL 3873575, *3 (D. Or. Aug. 15, 2018) (citation omitted). The court may nonetheless excuse block billing "when the billing period is no more than three hours." Id. (citation and internal quotations omitted). Accordingly, the Court does not exclude any billing entries pertaining to groups of tasks totaling less than three hours. Conversely, entries that exceed three hours are reduced by fifty percent. See Noel v. Hall, 2013 WL 5376542, *6 (D. Or. Sept. 24, 2013) (reducing each block billed entry of over three hours by fifty percent). Thus, Thompson's hours are reduced by 5.25 and Terry's hours are reduced by 1.55. Rossmiller Decl. Ex. 1 (doc. 41) (10/24/2017, 10/30/2017, 10/31/2017, and 8/22/2018 entries).

Further, Rossmiller billed 3.1 hours for reading and responding to an email from the Courtroom Deputy "concerning letters of fire loss victims Mead and Gradt," and another 3.2 hours "[e]xam[ing] and analyz[ing] issue raised by several attorneys." Id. (5/02/2018 and 7/23/2018 entries). It is unclear what these entries refer to. At the time of the former, Mead had requested – via a one-paragraph letter filed pro se – dismissal from this lawsuit since she did not sustain any damages as a result of the underlying fire, a request which the Court summarily granted; there is no letter in the docket from Gradt. At the time of the latter, only one attorney for defendants had made an appearance and there is no indication conferral with other counsel took place. Because there is insufficient information regarding these entries, the 6.3 hours Rossmiller billed in relation

thereto appears excessive. See Prison Legal News, 2013 WL 2156471 at *8 (court may strike inadequately specified tasks) (citation omitted). The Court finds 2 hours reasonable and deducts 4.3 hours from Rossmiller's time.

Likewise, the Court finds the hours expended drafting plaintiff's interpleader complaint and accompanying motion to deposit funds excessive. Thompson, who had only a few months of experience as an attorney at the time his work on this lawsuit was performed, initially spent 21.6 hours preparing for and drafting plaintiff's complaint and motion to deposit funds. Rossmiller Decl. Ex. 1 (doc. 41) (10/24/2017, 10/25/2017, 10/27/2017, 10/29/2017, 10/30/2017, 10/31/2017, and 11/1/2017 entries). Boyd and Rossmiller (presumably Thompson's supervisors) then spent an additional 3.9 hours working on these documents. Id. (11/1/2017 and 11/2/2017 entries). Thereafter, Thompson devoted another 2.9 hours to revisions, determining how to deposit a check with the Court, and reviewing the status of the complaint. Id. (11/2/2017, 11/30/2017, 12/13/2017, and 1/4/2017 entries).

In total, plaintiff's counsel spent more than 30 hours on the complaint and motion to deposit funds. Given that the complaint (excluding the caption) is three-and-a-half pages long and the motion (again, excluding the caption) is just over one page and largely duplicative of the complaint, in conjunction with Rossmiller's representation that his firm possesses "a high degree of skill and knowledge concerning federal practice and federal law concerning interpleaders," the Court presumes the vast majority of the hours at issue were accrued due to Thompson's inexperience. Pl.'s Mot. Att'y Fees 3 (doc. 40). The work of three attorneys could have been more efficiently consolidated, such that the 24.5 hours employed by Thompson, the most junior attorney, warrants a twenty-five percent reduction. See Prison Legal News, 2013 WL 2156471 at *8 ("[a] party is free to hire and pay as many attorneys as it wishes; nonetheless, that party cannot expect

to shift the cost of these inefficiencies to its opponent") (citations omitted); see also Malbco Holdings, LLC v. AMCO Ins. Co., 2010 WL 2572849, *12 (D. Or. June 22, 2010) (court generally excludes the more junior attorney's time). Because 5.25 of these hours have already been excluded due to Thompson's block billing, this results in an additional reduction of 4.8125 hours from Thomson's time (i.e., 24.5 hours – 5.25 hours = 19.25 hours x 25% = 4.8125).

Similarly, the Court finds the hours plaintiff's counsel accrued reviewing and analyzing the Court's August 2018 F&R excessive. Boyd, Terry, and Rossmiller collectively billed 4 hours for this task. Rossmiller Decl. Ex. 1 (doc. 41) (8/20/2018 and 8/21/2018 entries). However, this Court's August 2018 F&R is approximately 4 pages long (including the caption); the analysis as to plaintiff's liability is a single paragraph because "[n]either Truck Insurance nor any other Defendant has objected to the discharge of State Farm." Findings & Recommendation 3 (Aug. 20, 2018) (doc. 33). Because the Court recommended granting plaintiff's unopposed motion in its entirety, the only possible remaining issue was the amount of attorney fees (for which plaintiff separately billed 15.4 hours). Id. at 3-4; Rossmiller Decl. ¶ 5 & Ex. 1 (doc. 41) (9/10/2018, 9/14/2018, 9/20/2018, and 9/24/2018 entries). In other words, the August 2018 F&R left little for plaintiff's counsel to strategize about or analyze, such that the Court finds the expenditure of one hour reasonable. As the more junior attorneys, Boyd's and Terry's hours arising from this task are eliminated (i.e., 1.4 and .20 hours, respectively), and Rossmiller's hours are decreased by .60.

Rossmiller's entries that are duplicative also merit a reduction in fees. A court may disallow time entries indicating that more than one attorney performed the same task. Prison Legal News, 2013 WL 2156471 at *8 (citation omitted). Rossmiller spent 1.1 hours "[e]xamin[ing]" the Court's delay in ruling on plaintiff's motion relating to liability and "analyz[ing] potential methods of requesting that the judge rule on State Farm's petition." Rossmiller Decl. Ex. 1 (doc. 41)

Page 7 – ORDER

(8/17/2018 entry). Yet, as denoted above, plaintiff's counsel hold themselves out as experienced federal litigators. Pl.'s Mot. Att'y Fees 3 (doc. 40). As such, Rossmiller should have been immediately aware of Local Rule 83-13, which resolves this precise issue. In fact, by the time Rossmiller undertook this work, Terry had already billed 1.3 hours "[p]repar[ing] correspondence to [the judge] under local rule 83-13." Rossmiller Decl. Ex. 1 (doc. 41) (8/15/2018 and 8/17/2018 entries). Because she is the more junior attorney, the Court strikes the 1.3 hours Terry allocated to this task.

Finally, plaintiff's invoices for clerical tasks are omitted. "Tasks that are secretarial or clerical in nature . . . are not compensable because they are overhead and thus already reflected in the hourly billing rate." Prison Legal News, 2013 WL 2156471 at *9 (citation and internal quotations omitted). Thompson billed a total of 1.9 hours for reviewing address information and determining service guidelines. Rossmiller Decl. Ex. 1 (doc. 41) (11/2/2017, 3/22/2017, and 3/23/2018 entries). While the Court accepts that the compilation of this information was necessary to commence this lawsuit, plaintiff's billing statement contains numerous similar entries charged by paralegal Chason. Thompson's clerical tasks appear to be superfluous and therefore not compensable pursuant to this attorney fee petition. The Court reduces Thompson's petition by 1.9 hours.

Considering the above-listed deductions, the Court awards 29.1375 hours of Thompson's time at $210 per hour ($6,118.88 total), 25.3 hours of Rossmiller's time at $230 per hour ($5,819 total), 13.85 hours of Terry's time at $210 per hour ($2,908.50 total), 6.7 hours of Boyd's time at $210 per hour ($1407 total), and 5.1 hours of Chason's time at $105 per hour ($535.50). Based on these calculations, the Court finds a total attorney fee award of $16,788.88 presumptively

reasonable. The Court has also considered the factors outlined in Kerr and finds that no additional adjustment is necessary.

**III.    Costs**

Plaintiff seeks to recover $1,298.80 in costs, the majority of which – i.e., $1,020.70 – are for filing, service, photocopy, and production fees. Rossmiller Decl. Ex. 2 (doc. 41). To the extent discernable, the remaining $278.10 in costs is for legal research and various "Lexis-Nexis Risk Solutions" reports. Id.

Costs are generally awarded to the prevailing party in a civil action as a matter of course. Fed. R. Civ. P. 54(d). The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and include "[f]ees of the clerk and marshal," "printing," and "making copies." 28 U.S.C. § 1920; Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987). Because they fall within the purview of 28 U.S.C. § 1920 and are properly documented within plaintiff's billing statement, the requested $1,020.70 in costs for filing, service, photocopies, and production of documents are awarded.

However, the remaining $278.10 in costs is disallowed. As a preliminary matter, plaintiff's brief does not provide any material information regarding these expenses. Pl.'s Mot. Att'y Fees 4 (doc. 40). The declaration produced in association with plaintiff's motion fails to properly document their purpose and need in accordance with Local Rule 54. Indeed, outside of simply listing the total value and categories of costs, plaintiff does not denote the nature of these charges. As a result, the Court cannot assess their reasonableness. See U.S. ex rel. Berglund v. Boeing Co., 2012 WL 697140, *4 (D. Or. Feb. 29, 2012) (denying expenses where the prevailing party "offered only a conclusory assertion" of entitlement and "[t]he exhibits attached to verify [the prevailing party's] costs reflect only the date and amount of the charges . . . but do not describe the purpose").

Moreover, the remaining costs are not taxable pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. See Chevron U.S.A., Inc. v. Pelican Butte Oil, LLC, 2011 WL 1398932, *4 (D. Or. Jan. 31), adopted by 2011 WL 1395313 (D. Or. Apr. 12, 2011) (overhead expenses, such as "computer research costs," that are "not statutorily authorized under 28 U.S.C. § 1920" are generally not recoverable).

## CONCLUSION

Plaintiff's Motion for Attorney Fees (doc. 40) is GRANTED in part and DENIED in part, in that plaintiff is awarded a total of $16,788.88 in attorney fees and $1,020.70 in costs.

IT IS SO ORDERED.

DATED this 5th day of November 2018.

          /s/ Jolie A. Russo        
Jolie A. Russo
United States Magistrate Judge